**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BENJAMIN AUGUSTIN MONTOYA and
BARBARA ANN MONTOYA,

        Plaintiffs,

v.                                                                                                                  No. CIV 03-0261 JB/RHS

CITY OF ALBUQUERQUE; STEPHEN
HOLWEGER, in his individual capacity; and
BRIAN PAIGE, in his individual capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Defendants' Motion to Dismiss Counts I, II, and III of Plaintiffs' Complaint (*Doc. 23*). The determinative issue is when the Plaintiffs' claims for false imprisonment, battery, and malicious abuse of process accrued under the New Mexico Tort Claims Act ("NMTCA"). Because the statute of limitations under the NMTCA began to run on the "date of occurrence resulting in loss," and because that date was more than two years before the Plaintiffs, Benjamin Augustin Montoya ("Mr. Montoya") and Barbara Ann Montoya ("Mrs. Montoya"), filed their original Complaint, the Court grants the Defendants' motion and dismisses Counts I, II, and III of the Amended Complaint.

**ALLEGATIONS**

The Montoyas allege that, on the night of October 15, 1999, the Defendants, Brian Paige ("Paige") and Stephen Holweger ("Holweger"), committed battery against them by, among other things, spraying Mr. Montoya in the eyes with pepper spray, swinging Mrs. Montoya into an adobe

pillar, and striking and grabbing both of them. See Amended Complaint ¶¶ 242 - 252, at 23-24. The Montoyas also allege that Paige and Holweger unlawfully detained and caused them to be arrested without reasonable suspicion or probable cause. See id. ¶¶ 234, 235, 236, at 22-23. The Montoyas were arrested and held in custody until the following day, October 16, 1999. See id. ¶¶ 149-153, at 12-13.

On October 16, 1999, Paige and Holweger initiated misdemeanor charges against the Montoyas by filing criminal complaints in Metropolitan Court. See id. ¶¶ 154, 156, 160, 162, at 13-14. The District Attorney's Office eventually dismissed the misdemeanor charges, but then brought felony charges before a Grand Jury in the Second Judicial District Court, County of Bernalillo. See id. ¶¶ 159, 180, 202, 204, at 13, 16, 19. The Grand Jury refused to indict the Montoyas on any felony charges, instead indicting them on misdemeanor charges. See id. ¶¶ 207-209, at 19-20.

Just before the November, 2001 trial setting, on October 25, 2001, the District Attorney's Office filed a *nolle prosequi* as to the indictments in the Montoyas' cases "for the reason that it is in the best interest of justice." Id. ¶¶ 221, 222, at 21. The Second Judicial District Court entered the *nolle prosequi* approximately two years and nine days after the date of the precipitating events leading to the original Complaint. The Montoyas contend that all of Paige and Holweger's actions were "part of a pattern of interrelated and on-going events, set in motion when the defendants decided to detain Ben Montoya and asked him to produce for them his identification." Id. ¶ 223, at 21.

**PROCEDURAL BACKGROUND**

On October 15, 2002, the Plaintiffs filed their original Complaint against the Defendants. On February 17, 2003, the Plaintiffs filed a First Amended Complaint. The Defendants removed this action to federal court on February 28, 2003.

The Amended Complaint alleges wrongful conduct on the part of the Defendants arising from the events that transpired on or about October 15 and 16, 1999 and the Montoyas' subsequent criminal prosecutions. In Counts I, II, and III of the Amended Complaint, the Plaintiffs assert claims of false imprisonment, battery, and malicious abuse of process under the NMTCA.

On July 10, 2003, the Defendants filed a Motion to Dismiss Counts I, II, and III of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The Defendants contend that the two-year statute of limitations in the NMTCA bars these claims. See Defendants' Brief in Support at 3. The Plaintiffs respond by arguing that their causes of action under the NMTCA are timely because they did not accrue until October 25, 2001, when the state dismissed the criminal charges against them. See Plaintiffs' Response at 5-6.

**STANDARD FOR DECIDING A MOTION TO DISMISS**

In ruling on a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the factual allegations of the complaint as true. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). The question is not whether the plaintiff will ultimately prevail, but whether the allegations entitle the plaintiff to offer evidence to support his or her claim. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (overruled on other grounds). The Court should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief. See Conley v. Gibson,

355 U.S. 41, 45-46 (1957); American Home Assurance Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977).

## LEGAL ANALYSIS

The Defendants do not argue that the facts alleged, taken as true, are insufficient to state causes of action for false imprisonment, battery, and malicious abuse of process pursuant to state law. Rather, they argue that the Montoyas brought these three counts outside of the statutory limitations period and that the Court should therefore dismiss them. There is no assertion that the Amended Complaint does not relate back to the original Complaint. The Court therefore need only consider whether the original Complaint filed on October 15, 2002 was timely.

Although the Amended Complaint includes claims under both state and federal law, the Defendants' motion to dismiss concerns only Counts I, II, and III, which, as their descriptive titles show, are specific claims brought under the NMTCA, not § 1983. Accordingly, with respect to Counts I, II, and III of the Montoyas' Amended Complaint, the two--year statute of limitations set forth in § 41-4-15A of the NMTCA applies. See NMSA 1978 § 41-4-15A (2003). Section 41-4-15A provides, in relevant part: "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within *two years* after the date of occurrence resulting in loss, injury or death . . . ." Id. (emphasis added).

The Montoyas do not dispute that the two-year statute of limitations under the NMTCA applies to Counts I, II, and III of their Amended Complaint. Rather, they argue that they satisfied this requirement by filing their original Complaint on October 15, 2002. They attempt to support this argument by asserting that the statute of limitations did not begin to run until October 25, 2001, the date that their criminal indictments were dismissed. See Plaintiffs' Response at 5-6.

The statute's language indicates that the period of limitations began to run when an "occurrence resulting in loss" took place. See NMSA 1978 § 41-4-15A. Until such a loss takes place, the statute of limitations under the NMTCA cannot begin to run. See McCoy v. Albuquerque Nat'l Bank, 99 N.M. 420, 424-425, 699 P.2d 306, 310-311 (1983) (interpreting the NMTCA statute of limitations as barring the plaintiff's claim). The New Mexico courts have interpreted the phrase "date of occurrence resulting in loss" to mean "when an injury manifests itself *and* is ascertainable, rather than when the wrongful or negligent act occurs." Long v. Weaver, 105 N.M. 188, 191, 730 P.2d 491, 494 (Ct. App. 1986) (emphasis in original).

In a subsequent case, the Court of Appeals of New Mexico recognized that the rule in Long v. Weaver developed from medical malpractice actions where the injury was not immediately apparent. See Bolden v. Village of Corrales, 111 N.M. 721, 721, 809 P.2d 635, 635 (Ct. App. 1990). In Bolden, the Court of Appeals stated that the term "ascertainable" is used in cases where the injury is inherently unknowable. See id. at 722, 809 P.2d at 636. The Court of Appeals went on to hold that the statute of limitations began to run when the plaintiff suffered an injury as a consequence of the alleged wrongful act of another for which the law affords a remedy. See id. The Court of Appeals rejected the plaintiff's argument that the statute of limitations did not begin to run until she discovered the true extent of her injury and held that it is not required that all of the damages resulting from a negligent or wrongful act be known before the statute of limitations begins to run. See id.

**I.    SECTION 41-4-15A BARS THE MONTOYAS' CLAIM IN COUNT I FOR FALSE IMPRISONMENT.**

To state a claim for false imprisonment, the Montoyas must allege the following elements: (i) the Defendants restrained or confined them against their will; and (ii) the Defendants knew that

they did not have the authority to restrain or confine them.  See UJI 14-401 NMRA 2003.  The Montoyas limit their allegations regarding the claim of false imprisonment to events that occurred on or about October 15 and 16, 1999.  See Amended Complaint ¶¶ 226-233, at 22.  Because the Montoyas had a basis for alleging the existence of each of these elements on or about October 15-16, 1999, the Court finds that the statute of limitations began to run at that time with respect to the claim for false imprisonment.

In setting out the factual basis for Count I of their Amended Complaint, the Montoyas do not mention the subsequent criminal prosecution.  None of the allegations pertaining to the false imprisonment count refer to acts or events on any date other than October 15 or October 16, 1999.  The Montoyas specifically allege that they were falsely imprisoned when Paige and Holweger detained Mr. Montoya when he would not produce his identification, grabbed him and physically restrained his movement, and caused both Mr. and Mrs. Montoya to be arrested.  See id. ¶¶ 226, 228, 230, 232, at 22.  There is thus no factual support for the Montoyas' argument that they could not bring their false imprisonment claim until the conclusion of the criminal proceedings.

The Montoyas contend that their claim of false imprisonment is a part of a "continuing seizure" that began when the Defendants decided to seek revenge against Mr. Montoya for his perceived insults and continued throughout their protracted criminal prosecutions.  See Plaintiffs' Response at 5.  To save their false imprisonment claim, the Montoyas contend that it is not a discrete claim, but rather a part of the "continuing seizure" that did not end until the date of the final termination of their criminal prosecutions.  See id. at 5-6.  This contention is undermined, however, by the fact that they do not allege any acts of detention or of restraint after the incident on October 15 - 16, 1999.  There is thus no factual basis to support a "continuing seizure."

The Montoyas further contend that, in light of the Supreme Court of the United States' decision in Heck v. Humphrey, 512 U.S. 477 (1994), it is unclear if a plaintiff can bring arrest-related claims, both torts and civil rights causes of action, while the state criminal prosecution is pending. See Plaintiffs' Response at 5.  Heck v. Humphrey did not, however, address the question of whether "arrest-related claims" can be brought while a criminal prosecution is still pending, but rather held that, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."  Heck v. Humphrey, 512 U.S. at 486-87.  This holding does not address arrest-related claims, nor call their viability into question.  Moreover, the Supreme Court in Heck v. Humphrey limited its consideration to § 1983 claims.  See id.  The case does not address or interpret the NMTCA.  It does not hold that a plaintiff cannot bring state tort claims until criminal proceedings have been terminated in the plaintiff's favor.

Using an analogy in the context of civil rights law, the Montoyas next argue that the tort of false imprisonment is interrelated with the lawfulness of their prosecution.  The Montoyas contend that, "'[t]he allegations relating to [their] arrest do not suggest a discrete constitutional injury, such as the use of excessive force in an otherwise constitutionally-sound arrest that could be addressed in a § 1983 action without casting aspersions on any subsequent state conviction for the charged offense [as prohibited by the holding of Heck].'"  Plaintiffs' Response at 5-6 (citing Rodriguez v. Ellis, No. CIV 01-90-P-C, 2001 WL 521849 at 6 (D.Me. May 16, 2001) (magistrate's recommended

decision dismissing complaint)).[1]  This analogy fails, however, because a claim related to the arrest of a plaintiff is not necessarily related to the validity of the prosecution.  Because probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, "the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges or acquittal."  Summers v. Utah, 927 F.2d 1165, 1166-67 (10th Cir. 1991) (citations omitted).

The Montoyas' analogy to federal case law also does not convince the Court that it should use it to avoid the wording of the state statute and the state case law interpreting it.  The NMTCA's specific provisions limit the potential tort liability of a governmental entity and its employees.  See Pemberton v. Cordova, 105 N.M. 476, 477, 734 P.2d 254, 255 (Ct. App. 1987).  New Mexico law provides that the statute of limitations under the NMTCA begins to run on the "date of occurrence resulting in loss."  NMSA 1978 § 41-4-15A.  In this case, this date would be on or about October 15, the date that the Montoyas contend they were falsely arrested.  See Amended Complaint ¶¶ 11, 226-233, at 2, 22.  The Plaintiffs did not file this state law claim within the two-year statute of limitations under the NMTCA, and therefore Count I fails to state a claim for which the Court can grant relief.

---

[1] Rodriguez v. Ellis provides no support for the Montoyas' position.  That case dealt with an inmate's § 1983 claims for false arrest, false imprisonment, and malicious prosecution, which were brought while his state prosecution was still pending.  See 2001 WL 521849 at 2.  The United States Magistrate Judge relied on Heck v. Humphrey in recommending to the District Judge that the plaintiff's claims be dismissed without prejudice until the termination of his state court criminal proceedings.  See id. at 6.

## II. A SIMILAR ANALYSIS OF COUNT II SHOWS THAT SECTION 41-4-15A BARS THE MONTOYAS' CLAIM FOR BATTERY.

The Montoyas allege in Count II of their Amended Complaint that the Defendants committed battery, for which the NMTCA waives immunity. As with false imprisonment, the Montoyas argue that Count II encompasses a "continuing seizure" that began when the incident became a physical beating of them. Again, the Montoyas argue that the courts in § 1983 cases look to the tort of battery to determine the appropriate accrual date for claims such as excessive use of force. They contend that the tort of battery is not discrete from the issue of the lawfulness of their arrest and prosecution. To state a claim for battery, the Montoyas must allege the following elements: (i) the Defendants intentionally touched or applied force to them; (ii) the Defendants acted in a rude, insolent or angry manner; and (iii) the Defendants' conduct was unlawful. See UJI 14-320 NMRA 2003. Because the Montoyas had a basis for alleging the existence of each of these elements on or about October 15, 1999, the Court finds that the statute of limitations began to run at that time with respect to the claim for battery.

The Montoyas' argument by analogy to § 1983 cases has even less force for battery than it does for false imprisonment. The Court cannot review the Amended Complaint and see how the date for battery could be anything but on or about October 15, 1999. There is not any basis for concluding that the Montoyas could not bring a state law claim for battery until the conclusion of their criminal proceedings.

## III. THE MONTOYAS' CLAIM FOR MALICIOUS ABUSE OF PROCESS IS NOT DEPENDENT ON WHEN THE DISTRICT ATTORNEY DISMISSED THE CRIMINAL CHARGES AGAINST THEM.

Count III of the Montoyas' Amended Complaint alleges a claim for malicious abuse of process. Again, the Montoyas argue that the two-year statute under the NMTCA did not begin to run on their claim of malicious abuse of process until the District Attorney's Office dismissed the criminal charges against them on October 25, 2001. In making this argument as to the claim for malicious abuse of process, the Montoyas rely heavily upon Robinson v. Maruffi, 895 F.2d 649 (10th Cir. 1990). Given, however, the distinctions between Robinson and this case, the Court will not rely on it to avoid the language of the statute and the state cases interpreting that language.

In Robinson v. Maruffi, the United States Court of Appeals for the Tenth Circuit held that a § 1983 malicious prosecution conspiracy claim does not accrue until the criminal proceedings are resolved in the plaintiffs' favor. See id. at 654. Ten years later, the Tenth Circuit reaffirmed the holding of Robinson v. Maruffi and found that it was consistent with the Supreme Court's opinion in Heck v. Humphrey. See Smith v. Gonzales, 222 F.3d 1220, 1223 (10th Cir. 2000). The Montoyas concede, however, that they are not claiming a conspiracy to commit malicious abuse of process. See Plaintiffs' Response at 5. Thus, Robinson v. Maruffi does not provide any support for their position.

In Heck v. Humphrey, the Supreme Court recognized that, "[j]ust as a cause of action for malicious prosecution [under state law] does not accrue until the criminal proceedings have terminated in the plaintiff's favor, . . . so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Heck v. Humphrey, 512 U.S. at 489-90 (internal citations omitted). The Montoyas

recognize that these federal cases specifically address the accrual of a civil rights claim under § 1983 for malicious prosecution. Nevertheless, the Montoyas contend that these federal holdings make clear that the common-law tort of malicious prosecution forms the nexus for the elements of the civil rights claim, and both the common-law tort of malicious prosecution and the civil right claim share the same time of accrual--the disposition of the charges in favor of the accused. See Plaintiffs' Response at 4.

The problem with the Montoyas' analogy of the cause of action of malicious prosecution with the cause of action of malicious abuse of process is that they are different torts with different elements. The traditional elements of malicious prosecution in New Mexico were: (i) initiation of proceedings; (ii) a lack of probable cause; (iii) favorable termination; (iv) malice; and (v) damages. See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 15, 953 P.2d 277, 282 (emphasis added). While the Montoyas' use of federal case law might be persuasive in an action for malicious prosecution, it is not as helpful in this case given the current state of New Mexico law. In 1997, the Supreme Court of New Mexico held that the torts of malicious prosecution and abuse of process

> should be restated as a single cause of action, which shall be known as 'malicious abuse of process,' and which shall be defined by the following elements: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.

DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 17, 953 P.2d at 283.

The Montoyas conclude from DeVaney v. Thriftway Mktg. Corp. that it is clear that a cause of action for the tort of malicious abuse of process in the context of a criminal case may only materialize once the case terminates, and the accused is no longer in jeopardy. See Plaintiffs' Response at 4. This interpretation, however, is at odds with the language of DeVaney. Furthermore,

-11-

the Montoyas cite no authority in support of this proposition. Similarly, the Court has not found any support for this proposition.

Indeed, in DeVaney, the Supreme Court held that a defendant could bring his or her malicious abuse of process claim before the termination of the underlying case. See id. at ¶ 24, 953 P.2d at 286. While the burden of proof changes depending whether the claim is brought as a counterclaim during the underlying case or after it is terminated, the fact that the Supreme Court of New Mexico allowed for the possibility of bringing it during the underlying case undermines the notion that a criminal case must be terminated before a defendant can bring a claim for malicious abuse of process. While one might attempt to distinguish between civil and criminal cases, nothing in DeVaney suggests such a result. In fact, in a case decided before DeVaney, the New Mexico Court of Appeals held that the element requiring termination of the underlying proceeding before the initiation of a malicious prosecution claim was applicable to civil cases. See Westland Development Co., Inc. v. Romero, 117 N.M. 292, 292, 871 P.2d 388, 388 (1994). Thus, the Montoyas cannot argue that the old termination element was intended merely to avoid collateral challenges to pending criminal prosecutions. The element applied equally to both civil and criminal cases before DeVaney, and this Court presumes that the Supreme Court of New Mexico was cognizant of that fact when it declined to retain the element as a component of the newly created tort of malicious abuse of process.

The Montoyas next contend that, had the Defendants prevailed--had the Montoyas been convicted of crimes against the Defendants--that would have been "conclusive evidence of the existence of probable cause." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 23, 953 P.2d at 286. While that may well be the law of New Mexico and elsewhere, the reverse--that there is no cause of action for malicious abuse of process until the criminal case is concluded--is far less clear.

In fact, the elements for a malicious abuse of process that the Supreme Court of New Mexico enunciated in DeVaney v. Thriftway Marketing Corp. do not require that the underlying case be terminated, much less be resolved in favor of the accused. See id. at ¶ 17, 953 P.2d at 283. Indeed, as stated above, the Supreme Court of New Mexico specifically rejected that element of the former tort of malicious prosecution as an element of the new tort of malicious abuse of process. See id. at ¶ 23, 953 P.2d at 286. Thus, the Montoyas' contention that the statute of limitations under the NMTCA does not begin to run for a malicious abuse of process claim until there is favorable termination for the accused would require this Court to add an element to the cause of action that the Supreme Court of New Mexico specifically chose not to add.

Finally, the federal cases upon which the Montoyas rely are not as helpful to their cause as they might appear at first glance. In Robinson v. Maruffi, not only did the Tenth Circuit's analysis involve the applicable statute of limitations for civil rights actions under § 1983 rather than the NMTCA statute of limitations, see Robinson v. Maruffi, 895 F.2d at 654, but the parties in that case agreed that the applicable statute of limitations was the three years for § 1983 actions. See id. Moreover, the plaintiff plead a claim for "malicious prosecution conspiracy" under § 1983. See id. Given these facts, the Tenth Circuit found that the three-year statute of limitations period had not run because the conspiracy to commit malicious prosecution concluded within the three-year statute of limitations period because it continued through a trial on the merits, and ended once the plaintiff was acquitted of the criminal charges. See id. at 654-655. As previously noted, the Montoyas do not allege a conspiracy to commit malicious abuse of process in this case.

In this case, the Defendants initiated criminal complaints against the Montoyas on October 16, 1999. See Amended Complaint, ¶¶ 154-156, 160-162, at 13-14. The Montoyas allege that these

complaints contained false accusations against them. See id. ¶¶ 155, 161, at 13-14. At oral argument, the Montoyas conceded that all four of the necessary elements for a claim of malicious abuse of process were present on October 16, 1999 when the Defendants filed the misdemeanor complaints against them. They were unable to point to any other date when all of the elements were present. Because the Court finds that the Montoyas' claim for malicious abuse of process accrued at the time the Defendants filed the allegedly false criminal complaints against them, it will dismiss the Montoyas' claim for malicious abuse of process under the NMTCA.[2]

**WHEREFORE, IT IS ORDERED** that the Defendants' Motion to Dismiss Counts I, II, and III of Plaintiffs' Complaint (*Doc. 23*) is granted and those three counts--for false imprisonment, battery, and malicious abuse of process under the New Mexico Tort Claims Act-- are dismissed with prejudice. The Court also denies the Defendants' request for attorney's fees and costs.

_____
**UNITED STATES DISTRICT JUDGE**

Peter Schoenburg
Carolyn M. Nichols
Rothstein, Donatelli, Hughes, Dahlstrom
 & Schoenburg, LLP
Albuquerque, New Mexico
*Attorneys for Plaintiffs*

Stephanie M. Griffin
City Attorney's Office
Albuquerque, New Mexico
*Attorneys for Defendants*

---

[2] The Defendants request attorney's fees and costs, but provide no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception. The Defendants point to no exception, and none appears available.