# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BENJAMIN AUGUSTIN MONTOYA and
BARBARA ANN MONTOYA,

      Plaintiffs,

vs.                                                                 No. CIV 03-0261 JB/RHS

CITY OF ALBUQUERQUE; STEPHEN
HOLWEGER, in his individual capacity; and
BRIAN PAIGE, in his individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Counts VI and VII of Plaintiffs' First Amended Complaint and Counts IV and V of Plaintiff Barbara Montoya's First Amended Complaint, filed March 5, 2004 (Doc. 69).[1] The primary issues are: (i) whether the Plaintiffs have alleged the violation of clearly established constitutional rights; (ii) whether genuine issues of material fact exist that may defeat Defendant Stephen Holweger's and Defendant Brian Paige's claims of qualified immunity with respect to Counts IV, V, and VI; and (iii) whether the First Amendment retaliation claim in Count VII is an appropriate legal theory under the circumstances of this case. With respect to Counts IV (False Arrest) and VI (Malicious Prosecution), the Court finds that the Plaintiffs have successfully

---

[1] The Defendants request summary judgment on Counts VI (§ 1983 - Prosecution Without Probable Cause and Retaliatory Prosecution) and VII (§ 1983 - Retaliation for Exercise of Freedom of Speech) with respect to both Plaintiff Benjamin Montoya and Plaintiff Barbara Montoya. The Defendants' requests for summary judgment on Counts IV (§ 1983 - Wrongful Seizure and Arrest) and V (§ 1983 - Excessive Use of Force), however, relate only to Plaintiff Barbara Montoya. Counts I, II, and III are no longer a part of this case. See Memorandum Opinion and Order Dismissing Counts I, II, and III, filed August 29, 2003 (Doc. 42).

alleged the violation of clearly established constitutional rights, and that genuine issues of material fact exist that may otherwise defeat the Defendants' claim of qualified immunity. Accordingly, the Court will deny the motion for summary judgment with respect to Counts IV and VI. With respect to Count V (Excessive Force), the Court finds that genuine issues of material fact exist that may defeat Defendant Holweger's claim of qualified immunity, but not Defendant Paige's claim of qualified immunity. Accordingly, the Court will grant the motion for summary judgment on the excessive force claim against Paige, but deny the motion as to the excessive force claim against Holweger. Because the Court further finds that a claim for First Amendment retaliation is not available to the Plaintiffs under the circumstances in this case, the Court will grant the motion for summary judgment with respect to Count VII.

## BACKGROUND

This case arises out of an incident that occurred on October 16, 1999 and involved the Montoyas, Holweger, and Paige. The incident began as a verbal exchange between Benjamin Montoya, Holweger, and Paige and escalated into a physical altercation between Benjamin Montoya and Paige. See Deposition of Brian Paige at 64:12 to 67:7; 69:9-14 (taken November 19, 2003). The physical altercation began in a vacant lot across the street from the Montoya residence and continued at the residence. See Plaintiff Benjamin Montoya's Responses to Defendants' First Set of Interrogatories, Interrogatory No. 19. Holweger participated in this altercation. See Deposition of Barbara Montoya at 72:2-7 (taken September 11, 2003). Because the details of this altercation are disputed, the Defendants have not moved for summary judgment on Benjamin Montoya's claim against Paige and Holweger for excessive use of force (Count V).

Barbara Montoya alleges that she was also the victim of excessive force and false arrest.[2] She alleges that she made attempts to protect her husband by blocking Holweger's path when he tried to move toward Benjamin Montoya and Paige. See Barbara Montoya Depo. at 69:16 to 71:3. When she did not follow Holweger's orders to move out of his way, Holweger struck Barbara Montoya in the thigh with his asp. See id. at 70:19 to 71:3. Barbara Montoya maintains that she did not physically touch Holweger or Paige during this incident; she denies jumping on either one of their backs. See id. at 71:19 to 72:1.

In addition to the leg strike, Barbara Montoya also alleges that Holweger hit her with his asp a second time when she attempted to prevent him from following Benjamin Montoya and Paige into her house. See id. at 91:4 to 93:9. When she refused to move out of the doorway, Holweger "jabbed" her underneath the ribs. Id. When she put her arms down in a reflexive motion to defend herself, Holweger grabbed her by one of her wrists and "flung" her into a pillar on the side of the porch. Id. It is undisputed that Paige did not make contact with Barbara Montoya.

One of the Plaintiffs' claims is that Paige and Holweger retaliated against them for exercising their First Amendment right to freedom of speech. In written discovery, Benjamin Montoya identified the following as the protected speech that he claims caused the Defendants to retaliate against him:

> I complained repeatedly about the Defendant officers' attitude towards me and my requests for assistance. I strongly criticized them, and I did use profanity, but I never threatened them with any harm. I also protested that I did not believe I had done anything illegal, and I asserted that I did not have to provide them with any identification.

---

[2] Benjamin Montoya's claim for false arrest is no longer at issue in this case. The parties have stipulated to the dismissal of that claim (Count IV). See Notice of Stipulated Dismissal Under Fed. R. Civ. P. 41(a)(1), filed May 3, 2004 (Doc. 106)(dismissing Count IV of Plaintiffs' Amended Complaint insofar as it applies to Benjamin Montoya).

Benjamin Montoya's Response to Interrogatory No. 24. Barbara Montoya stated that she "complained repeatedly about the Defendant officers' treatment of my husband . . . strongly criticized their actions and repeatedly begged and yelled for them to stop what they were doing." Plaintiff Barbara Montoya's Responses to Defendants' First Set of Interrogatories, Interrogatory No. 23. Benjamin Montoya alleges that his speech caused the Defendants to retaliate by "detaining him, spraying his eyes with mace, beating him, and arresting him." First Amended Complaint for Recovery of Damages Caused by Deprivation of Civil Rights and Tortious Conduct ¶ 297, at 30-31, filed February 17, 2003, Second Judicial District Court, Bernalillo County, State of New Mexico, attached to Notice of Removal, filed February 28, 2003 (Doc. 1)("Amended Complaint"). Barbara Montoya alleges that Paige and Holweger retaliated against her speech by "detaining her, beating her, manhandling her, and arresting her." Id. ¶ 298, at 31.

Following the Plaintiffs' arrest, Holweger and Paige filed criminal complaints against Benjamin and Barbara Montoya in Metropolitan Court. See id. ¶¶ 154, 160, at 13-14. The Plaintiffs allege that Paige and Holweger made false allegations in those complaints. See id. ¶¶ 155, 161, at 13-14. The District Attorney eventually dismissed the misdemeanor criminal complaints and proceeded against the Montoyas with felony battery charges. See Target Letters to Benjamin and Barbara Montoya from Julie N. Altwies, Deputy District Attorney, dated January 25, 2000.

Paige and Holweger testified at the Grand Jury proceeding. See Grand Jury Transcripts, Testimony of Brian Paige and Stephen Holweger. The Plaintiffs allege that Paige and Holweger testified falsely during the Grand Jury proceeding. See Amended Complaint ¶ 199, at 18. After hearing all of the testimony, the Grand Jury entered a "no bill" for all felony counts, and indicted the Plaintiffs on misdemeanor charges: Resisting, Evading or Obstructing an Officer (both Plaintiffs) and

Disorderly Conduct (Benjamin Montoya). See Grand Jury Indictments. On October 25, 2001, just before the November trial setting, Assistant District Attorney Richard Watts filed a *nolle prosequi* as to the entire indictment in both Benjamin and Barbara Montoya's cases.

The Defendants have moved the Court for summary judgment on these claims, asserting that they are entitled to qualified immunity. Paige and Holweger argue that they did not commit a clearly established constitutional violation because: (i) there was probable cause to arrest and indict the Plaintiffs; and (ii) the facts as alleged by Barbara Montoya do not establish that Holweger used excessive force against her. Paige and Holweger also argue that the Plaintiffs' First Amendment retaliation claim fails as a matter of law because it relates to the alleged use of excessive force and is therefore properly analyzed under the reasonableness standard of the Fourth Amendment.

## QUALIFIED IMMUNITY AND SUMMARY JUDGMENT STANDARDS

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). If the plaintiff meets this two-part burden, the defendant "assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute." Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

In ruling on a summary judgment motion, the Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. See Allen v. Muskogee, Oklahoma, 119 F.3d 837, 839-40 (10th Cir. 1997). The Court's role on a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. See Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. See Anderson v. Liberty Lobby, Inc. 477 U.S. at 249-50.

## **LEGAL ANALYSIS**

During briefing and the hearing on this motion, the Defendants did not argue that the rights at issue in this case were not clearly established. They instead argued that no constitutional violation occurred, because there was probable cause to arrest and indict the Plaintiffs, and the facts as alleged by Barbara Montoya do not amount to excessive force as a matter of law. At the summary judgment

stage, however, the Court must view the record in the light most favorable to the Plaintiffs. The Plaintiffs have shown that there is admissible evidence in the record from which a jury could find that the Defendants arrested Barbara Montoya and initiated criminal proceedings against both the Plaintiffs without probable cause. The Plaintiffs have also demonstrated a genuine issue of material fact whether Holweger's use of force against Barbara Montoya was reasonable. The Plaintiffs have not, however, shown that they are entitled to present their First Amendment retaliation claim to the jury.

I. **GENUINE ISSUES OF MATERIAL FACT EXIST THAT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON BARBARA MONTOYA'S FALSE ARREST CLAIM (COUNT IV).**

"When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)(quoting Hunter v. Bryant, 502 U.S. 224, 228(1991)). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Romero v. Fay, 45 F.3d at 1476. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." Saucier v. Katz, 533 U.S. 194, 206 (2001).

In this case, Holweger and Paige assert that they had probable cause to arrest Barbara Montoya for the crime of Refusing to Obey pursuant to § 12-2-19 of the City of Albuquerque Code of Ordinances. Barbara Montoya admits that she obstructed Holweger's path as he attempted to move toward Paige and Benjamin Montoya. See Barbara Montoya Depo. at 66:23 to 68:5. She also

admits that she refused to move when Holweger ordered her to get out of the way. See id. Thus, Barbara Montoya does not directly challenge the Defendants' contention that she refused to obey an order from a police officer.

The crux of Barbara Montoya's argument is that Holweger's order was unlawful. According to the Plaintiffs' allegations, Paige was using excessive force against her husband. The Defendants have conceded that the question whether they used excessive force against Benjamin Montoya is a question for the jury, and have not moved for summary judgment on that issue. Thus, for purposes of this motion, the Court must assume that the Defendants were using excessive force against Benjamin Montoya and, indeed, were brutalizing him.

Barbara Montoya believed that Holweger was moving toward Benjamin Montoya and Paige in an attempt to assist Paige in that use of excessive force. There is no evidence in the record to support the inference that Holweger was moving toward Paige in order to assist or to defend Benjamin Montoya. Indeed, there is evidence in the record that Holweger was going to help Paige.

If the Plaintiffs' version of facts is accurate, as the Court must assume at this stage, Holweger's purpose in ordering Barbara Montoya to move out of his way was to allow him to use further unlawful force against her husband. Under those circumstances, the order would be unlawful. A police officer cannot give an unlawful order and then base probable cause for an arrest on a citizen's refusal to obey that unlawful order.

A person has a right to defend himself or herself against a police officer when the police officer uses excessive force to effect an arrest. See Fugere v. State, Taxation and Revenue Dept., Motor Vehicles Div., 120 N.M. 29, 36, 897 P.2d 216, 223 (Ct. App. 1995)(citations omitted). "The

right exists whether the arrest is lawful or unlawful." Id.[3] The right of self-defense includes the defense of others. See e.g., State v. Benally, 131 N.M. 258, 260, 34 P.3d 1134, 1136 (2001); State v. Parish, 118 N.M. 39, 43, 878 P.2d 988, 992 (1994). Thus, if Paige was using excessive force against Benjamin Montoya, and Holweger was moving toward the pair in an effort to assist in that unlawful objective, Holweger's order for Barbara Montoya to move out of his way was unlawful. This issue cannot be resolved without a determination whether the Defendants used excessive force against Benjamin Montoya. Accordingly, because genuine issues of material fact exist with respect to the Defendants' use of force against Benjamin Montoya, the Court will not grant summary judgment in favor of the Defendants on Barbara Montoya's false arrest claim.

## II. THE COURT WILL GRANT PAIGE'S MOTION FOR SUMMARY JUDGMENT ON BARBARA MONTOYA'S EXCESSIVE FORCE CLAIM (COUNT V), BUT FINDS THAT GENUINE ISSUES OF MATERIAL FACT EXIST THAT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF HOLWEGER.

In Count V of the Amended Complaint, each Plaintiff states a cause of action for excessive force against each Defendant. As stated above, Benjamin Montoya's excessive force claims are not at issue in this motion. The Defendants urge the Court, however, to grant summary judgment in their favor with respect to Barbara Montoya's excessive force claims.

Paige asserts that summary judgment in his favor is proper because he did not touch Barbara Montoya in any way. Holweger asserts that summary judgment in his favor is proper because the force he used against Barbara Montoya was objectively reasonable as a matter of law. Because the Court finds that Paige is entitled to qualified immunity, but that Holweger is not, it will grant the

---

[3] Because the right to self-defense exists even during the course of a lawful arrest, the fact that the parties have filed a stipulated dismissal concerning Benjamin Montoya's false arrest claim is irrelevant for purposes of this analysis.

motion with respect to Paige and deny the motion with respect to Holweger.

The Court must analyze the Plaintiffs' allegations of excessive force under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989)(holding that all claims that law enforcement officers have used excessive force should be analyzed under the Fourth Amendment and its "reasonableness" standard). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. The reasonableness inquiry also "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." Id.

There is no evidence in the record that Paige used any physical force against Barbara Montoya; it is undisputed that he did not touch her. The Defendants point out that, for purposes of establishing liability under § 1983, the Plaintiffs must show that each of the Defendants personally participated in the alleged constitutional violation. See Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997)("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Because the record establishes that Paige did not personally use any force against Barbara Montoya, the Court finds that any liability he may have for excessive force must stem from Holweger's conduct.

The Plaintiffs argue that Paige is not entitled to summary judgment because "it has been

clearly established law since at least 1984 that an officer who fails to stop another officer from using excessive force is liable for the ensuing violation of the plaintiff's rights." Plaintiffs' Response at 35 (citing Lusby v. TG&Y Stores, Inc., 749 F.2d 1423, 1433 (10th Cir. 1984), vacated on other grounds, 474 U.S. 805 (1985); and Mick v. Brewer, 76 F.3d 1127, 1136 (1996)(holding that the law was clearly established before June 18, 1992 that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983)). The Plaintiffs acknowledge that Paige is not liable simply because he was present at the scene of the constitutional violation, but only "if he had the opportunity to intervene but failed to do so." Lusby v. TG&Y Stores, Inc., 749 F.2d at 1433.

The Plaintiffs have not pointed to any evidence in the record that establishes that Paige had the opportunity to intervene in Holweger's alleged use of excessive force against Barbara Montoya. It is undisputed that, at the time Holweger used force against Barbara Montoya, Paige was involved in a physical altercation with Benjamin Montoya. The Plaintiffs contend that, "[i]f [Paige] had not been engaged in holding her husband immobile in a headlock in order to effectuate a beating by Defendant Holweger, [Paige] certainly could have prevented the excessive use of force by Defendant Holweger against Plaintiff Barbara Montoya when Defendant Holweger first struck her with his 'asp' baton." Plaintiffs' Response at 35. While this assertion may shed light on Paige's use of force against Benjamin Montoya, it does little to show how he could have prevented Holweger's use of force against Barbara Montoya. He was not available to intervene on her behalf. Any attempt to show that he somehow should have been available to intervene, or that if he had not been using excessive force on Benjamin Montoya he would have stopped Holweger's use of force on Barbara Montoya, is speculative and does not preclude summary judgment in favor of Paige. Accordingly, the Court finds

that Paige is entitled to qualified immunity from Barbara Montoya's excessive force claim and will grant summary judgment in his favor on that claim.

The undisputed facts present a different situation with respect to Holweger. It is undisputed that Holweger struck Barbara Montoya once in the thigh with his asp. The parties dispute, however, whether Barbara Montoya jumped on Holweger's and Paige's backs, and whether she was disobeying a lawful order from Holweger to move out of his way. If a jury were to believe the Plaintiffs' version of the facts, it might conclude that Holweger used unnecessary force against Barbara by striking her with an asp when she posed no physical threat to him and was acting lawfully by attempting to defend her husband from excessive force. In his deposition, the Defendants' expert, Thomas T. Gillespie, testified that, assuming Barbara Montoya's version of the facts is true, "there would have been no reasonable basis for using any type of baton . . . ." Deposition of Thomas T. Gillespie at 30:6-14 (taken December 1, 2003). Furthermore, the parties dispute whether Holweger jabbed Barbara Montoya in the ribs while she was blocking his entrance into the house and swung her into a pillar supporting the porch.

The Court believes that this case is distinguishable from Gross v. Pirtle, 245 F.3d 1151 (10th Cir. 2001). In that case, the plaintiff claimed that the defendant had kicked his foot "very hard." Id. at 1158. The United States Court of Appeals for the Tenth Circuit acknowledged that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" Id. (quoting Graham v. Connor, 490 U.S. at 396). "In making an arrest, officers may 'use some degree of physical coercion or threat thereof to effect it.'" Gross v. Pirtle, 245 F.3d at 1158 (quoting Graham v. Connor, 490 U.S. at 396). The Tenth Circuit went on to conclude that the defendant's act in kicking the plaintiff's foot was a reasonable use of force that was

incidental to positioning the plaintiff for a pat down.

This case, however, does not involve allegations of force incidental to normal arrest procedures. Holweger was not attempting to arrest Barbara Montoya at the time he used force against her. According to Barbara Montoya's allegations, both instances of force occurred when Holweger was attempting to get past her to join Paige in using excessive force against Benjamin Montoya. Holweger did not use a push or shove, but a baton, which is a different level of force; police officers receive training and direction on when and how to use such force. Accordingly, the Court finds that there are genuine issues of material fact that preclude summary judgment in Holweger's favor on Barbara Montoya's excessive force claim.

## III.  BECAUSE THE PLAINTIFFS HAVE ALLEGED THAT THE DEFENDANTS KNOWINGLY GAVE MATERIAL FALSE STATEMENTS IN THEIR CRIMINAL COMPLAINTS AND GRAND JURY PROCEEDINGS, THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' MALICIOUS PROSECUTION CLAIM (COUNT VI).

There are two components to the Plaintiffs' malicious prosecution claim under § 1983. First, they allege that the Defendants filed criminal complaints against them in Metropolitan Court. Second, they allege that the Defendants testified falsely before the Grand Jury that indicted the Plaintiffs.

In the Tenth Circuit, courts must "take[] the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim"; "the ultimate question, [however], [is] whether the plaintiff has proven a constitutional violation." Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996). See also Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996)("It is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983."). The Tenth Circuit recently clarified that "federal courts fashioning constitutional analogues to traditional common law

torts should refer to the general common law tradition, rather than to the law as defined by the jurisdiction where the action originated." Pierce v. Gilchrist, 359 F.3d 1279, 1289 (10th Cir. 2004).

The crux of the Plaintiffs' malicious prosecution claim is that the Defendants gave false statements in both their initial criminal complaints and during the Grand Jury proceedings. The Defendants argue that they are not liable for malicious prosecution because they did not initiate the proceedings against the Plaintiffs and the Grand Jury's indictment established probable cause for the prosecution. The record demonstrates, however, that the Defendants filed criminal complaints against the Plaintiffs in Metropolitan Court. See Criminal Complaints. The Court will allow the claim regarding the charges the Defendants filed to proceed to the jury.

With respect to the charges on which the Grand Jury indicted the Plaintiffs, the Defendants contend that the indictment vitiates any potential liability. The Tenth Circuit has stated, however, that:

> "A prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial -- none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision . . . . *If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.*"

Pierce v. Gilchrist, 359 F.3d at 1292 (quoting Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir.1988)(emphasis in original)). Because the Plaintiffs have introduced evidence sufficient to allow a jury to find that the Defendants testified falsely, the Court will not grant summary judgment on the malicious prosecution claim.

Although it does not appear that New Mexico law constrains the Plaintiffs' malicious prosecution claims, even if it did, the Court would reach the same conclusion. In New Mexico, the

state Supreme Court has combined the torts of malicious prosecution and abuse of process into a single tort known as malicious abuse of process. See DeVaney v. Thriftway Marketing Corp., 1998-NMSC-001, ¶ 17, 953 P.2d 277, 283. A plaintiff must establish the following four elements to prevail on a claim for malicious abuse of process: "(i) the initiation of judicial proceedings against the plaintiff by the defendant; (ii) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (iii) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (iv) damages." Id. With respect to the first element, the New Mexico Supreme Court has stated that a prosecutor's decision to initiate charges will ordinarily prevent liability against a defendant. See Weststar Mortg. Corp. v. Jackson, 2003-NMSC-002, ¶¶ 10-11, 61 P.3d 823, 829-30. The court went on to state, however, that "the defendant can be regarded as an instigator of the proceeding . . . if he [or she] communicates material information falsely or inaccurately and the prosecutor relies upon his [or her] statement." Id. ¶ 11, 61 P.3d at 830. Thus, the Court finds that genuine issues of material fact exist that preclude summary judgment on the Plaintiffs' malicious prosecution claim and will deny the Defendants' motion.

## IV.  THE PLAINTIFFS' CLAIMS FOR FIRST AMENDMENT RETALIATION (COUNT VII) FAIL AS A MATTER OF LAW.

In Count VII of their Amended Complaint, the Plaintiffs allege that the Defendants violated their rights under the First Amendment. The Defendants move the Court to grant summary judgment in their favor on this Count on the ground that it challenges the validity of the Plaintiffs' seizure and thus falls exclusively within the scope of the Fourth Amendment. The Plaintiffs contend that the First Amendment provides an independent basis for their claims apart from the Fourth Amendment.

The Court begins its analysis by looking to the language of the Amended Complaint. Benjamin

Montoya alleges that his speech caused the Defendants to retaliate by "detaining him, spraying his eyes with mace, beating him, and arresting him." Amended Complaint ¶ 297, at 30-31. Barbara Montoya alleges that Paige and Holweger retaliated against her speech by "detaining her, beating her, manhandling her, and arresting her." Id. ¶ 298, at 31. Thus, by the terms of the Amended Complaint itself, the Defendants' allegedly retaliatory conduct is limited to their use of force and decision to arrest the Plaintiffs. The Plaintiffs allege that their protected speech involved criticizing the Defendants' conduct on the evening of October 16, 1999, refusing to produce identification, and asking them to stop using excessive force against the Plaintiffs. See Plaintiffs' Answers to Interrogatories.

The Defendants are correct that claims regarding the reasonableness of force used during a seizure requires analysis under the Fourth Amendment's reasonableness standard. See Graham v. Connor, 490 U.S. at 395. Similarly, challenges to the existence of probable cause for an arrest are within the scope of the Fourth Amendment. See Romero v. Fay, 45 F.3d at 1476. Thus, to the extent that the Plaintiffs are alleging that the Defendants' use of force or decision to arrest constituted retaliation in violation of the First Amendment, the Court finds that it must analyze these claims under the Fourth Amendment.

The Court believes that allowing the Plaintiffs to proceed with their First Amendment retaliation claim would unnecessarily complicate excessive force claims brought under the Fourth Amendment and would be contrary to the Supreme Court's holding in Graham v. Connor. While the Plaintiffs argue that speech played a central role in this case, the Court believes that the same is true of almost every excessive force case. Nearly all citizens who believe that police officers are using excessive force against them would likely protest and ask the officers to stop. The Court does not

believe that the Graham v. Connor court contemplated First Amendment claims in every future excessive force claim.

Furthermore, the Court believes that it would be inconsistent to analyze the same set of facts under both the First and Fourth Amendments. The First Amendment claims require the Court to look to the officers' intent and to determine whether the protected speech was the motivating factor behind the retaliation. The Fourth Amendment analysis, however, is detached from the Defendants' state of mind. See Graham v. Connor, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").[4] Accordingly, the Court finds that summary judgment is appropriate with respect to the Plaintiffs' First Amendment retaliation claim and will grant the Defendants' motion.

**IT IS ORDERED** that the Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Counts VI and VII of Plaintiffs' First Amended Complaint and Counts IV and V of Plaintiff Barbara Montoya's First Amended Complaint is granted in part and denied in part. The Court grants the motion with respect to Barbara Montoya's claim for excessive use of force against Defendant Paige (Count V) and the Plaintiffs' claims for First Amendment retaliation (Count VII). The Court will dismiss these claims with prejudice. The Court denies the motion with respect to Barbara Montoya's claim for wrongful seizure and arrest (Count IV), Barbara Montoya's claim for excessive use of force against Defendant Holweger (Count V), and the Plaintiffs' claims for malicious prosecution (Count VI).

---

[4] In their briefing, the Plaintiffs attempt to argue that the Defendants' retaliation included "their arrest and prosecution." Plaintiffs' Response at 30. The Amended Complaint, however, does not allege that the Defendants' participation in the prosecution constituted retaliation under the First Amendment.

                                             _____
                                             UNITED STATES DISTRICT JUDGE

Counsel:

Marc Lowry
Carolyn Nichols
Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg, LLP
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*


Stephanie M. Griffin
City of Albuquerque Legal Department
Albuquerque, New Mexico

    *Attorney for the Defendants*