**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BENJAMIN AUGUSTIN MONTOYA and
BARBARA ANN MONTOYA,

Plaintiffs,

vs. No. CIV 03-0261 JB/RHS

CITY OF ALBUQUERQUE; STEPHEN
HOLWEGER, in his individual capacity; and
BRIAN PAIGE, in his individual capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion in Limine to Introduce Evidence of Defendant Holweger's and Defendant Paige's Bias to Testify Favorably for Each Other, filed May 5, 2004 (Doc. 107); and (ii) the Defendants' Motion in Limine No. VIII: Motion to Limit Plaintiffs' Cross Examination of Defendants, filed May 12, 2004 (Doc. 130). The primary issues are: (i) whether the Court should allow the Plaintiffs to question the Defendants regarding an alleged extramarital affair in which Defendant Brian Paige orchestrated a relationship between a female acquaintance and Defendant Stephen Holweger, and which both Defendants hid from Holweger's then-wife, Michelle Gropp; and (ii) whether the Court should allow the Plaintiffs to introduce extrinsic evidence of the alleged extramarital affair in the form of testimony from Michelle Gropp. Because the Court finds that such evidence is relevant to expose potential bias on the Defendants' part, it will allow the Plaintiffs to introduce it. Because the Court finds, however, that some proposed evidence is protected by the marital communications privilege, the Court will not allow testimony or evidence concerning Holweger's alleged confession to Gropp concerning the affair and Paige's

involvement in it.

**BACKGROUND**

This case arises out of an incident that occurred on October 16, 1999 and involved the Plaintiffs, Defendant Holweger, and Defendant Paige. The parties versions of events differ significantly and the parties will proceed to trial before a jury on their claims of excessive force, false arrest, and malicious prosecution.[1]

The Plaintiffs filed a motion *in limine* seeking to introduce evidence of the Defendants' bias to testify favorably for each other. The Plaintiffs point to several sources of potential bias: (i) the Defendants are members of a common organization, the Albuquerque Police Department ("APD"); (ii) the Defendants were partners within APD and made a conscious effort to work together throughout their careers; (iii) Paige orchestrated an extramarital affair between Holweger and one of Paige's female acquaintances; and (iv) despite that the Defendants and their wives often socialized together, both Defendants hid the affair from Holweger's wife for some time. The Plaintiffs contend that this evidence establishes that the Defendants have a bias in favor of one another that makes them willing to deceive others to protect and/or benefit each other.

The Plaintiffs learned of the alleged extramarital affair when their counsel interviewed Michelle Gropp. The Plaintiffs assert that Gropp informed the Plaintiffs' counsel that Holweger confessed to her that he had participated in an extramarital affair during their marriage, and that Paige had been instrumental in setting up the affair. The Plaintiffs' offer of proof concerning the affair has consisted of counsel's representations to the Court regarding this conversation with Gropp. The Plaintiffs did not provide the Court with evidence to support their representations.

[1] Only Plaintiff Barbara Montoya brings the false arrest claim.

The Defendants filed a response to the Plaintiffs' motion *in limine* and argued that several reasons exist to exclude evidence regarding the alleged extramarital affair.[2] The Defendants argued that the Court should exclude such evidence because: (i) it is hearsay; (ii) the Plaintiffs did not submit evidence to support their allegations; and (iii) the information obtained from Michelle Gropp falls within the husband and wife privilege as set forth in New Mexico Rule of Evidence 11-505.

The Court held a hearing on this matter on May 11, 2004. Michelle Gropp did not appear, nor did the Plaintiffs introduce any evidence supporting their representations concerning the content of Gropp's proposed testimony. After hearing argument from counsel, the Court reserved final ruling, but indicated that it was inclined to exclude Gropp's testimony but to allow inquiry regarding the alleged extramarital affair on cross-examination of the Defendants.

The day after the hearing, the Defendants filed their own motion *in limine* addressing this issue. See Defendants' Motion in Limine No. VIII. The Defendants move pursuant to rules 401, 402, 403, 404, 501, 608, 611, and 801 of the Federal Rules of Evidence and request that the Court limit the Plaintiffs' cross-examination of the Defendants to preclude questions concerning the alleged extramarital affair. The Plaintiffs did not file a response to the Defendants' motion. Because the Defendants' motion concerns the same issues contained in the Plaintiffs' earlier motion and that the parties argued at the May 11, 2004 hearing, the Court will decide both motions together.[3]

---

[2] The Defendants do not oppose the Plaintiffs' motion to the extent that it seeks to introduce evidence establishing that the Defendants were close friends who deliberately chose to work as partners during their careers with APD. The Court believes that such evidence is admissible on the issue of potential bias and will allow such evidence.

[3] On May 17, 2004, the Defendants submitted an exhibit in support of their motion *in limine*. The exhibit was an audio tape containing two interviews conducted by defense counsel, one with Michelle Gropp and another with Gropp's mother, Betty Wright. The Court has reviewed and considered these interviews. Because the Defendants filed the taped interviews under seal, the Court will not discuss the contents of those

## LEGAL ANALYSIS

The parties' motions *in limine* regarding Holweger's alleged extramarital affair raise numerous evidentiary issues, including relevance, potential prejudice, character evidence, spousal privilege, credibility, impeachment, and hearsay. The Plaintiffs have framed this issue as one of bias. They want to introduce evidence from which the jury could infer that the Defendants will knowingly lie to protect one another. The Defendants, on the other hand, have addressed the issue as one of credibility and/or character, and contend that evidence concerning the alleged extramarital affair is irrelevant, improper character evidence, and unduly prejudicial. Because the Court believes that evidence of Paige's involvement in Holweger's alleged extramarital affair is probative of bias, it will allow evidence and testimony limited to Paige's knowledge of and involvement in the affair. Because the Court finds that the marital communications privilege protects Holweger's alleged confession to Gropp during the marriage, it will not allow questioning on that topic.

## I. THE PROPOSED EVIDENCE IS PROBATIVE OF BIAS AND IS RELEVANT.

The Defendants first argue that the proposed evidence concerning Holweger's alleged extramarital affair is inadmissible because it is not relevant. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. The Defendants contend that evidence of Holweger's alleged infidelity is not probative of the question

interviews in this opinion. The Court is concerned, however, whether there is a good faith basis for the Plaintiffs to question the Defendants about the alleged extramarital affair and Paige's knowledge of or involvement therein. The Plaintiffs should re-examine their evidence and, before asking any questions of any witness about this matter, make certain they have a good faith basis for any question.

whether the Defendants used excessive force against the Plaintiffs, arrested Barbara Montoya without probable cause, or maliciously prosecuted the Plaintiffs.

The Court agrees with the Defendants to the extent that the proposed evidence does not relate to one of the legal elements of the Plaintiffs' claims or to the Defendants' defenses. This case, however, turns to a large degree on the jury's assessment of the various parties' credibility. The Plaintiffs' version of events is markedly different from the Defendants' version. If the Plaintiffs have correctly labeled this evidence as bias evidence, then the relevance inquiry becomes quite broader.

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). The Supreme Court has described bias as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." Id. The parties disagree on whether evidence concerning Paige's involvement in Holweger's extramarital affair relates to bias or only to the Defendants' character and credibility.

The fact that Holweger engaged in an extramarital affair may be irrelevant. Standing alone, it does not show bias and is improper character evidence. The Plaintiffs' contention, however, is that Paige's involvement in and knowledge of Holweger's affair, and his intentional deceit in covering up the affair, demonstrate that Paige is willing to lie to protect Holweger. If the facts are as the Plaintiffs claim, the Court believes that such evidence does serve to inform the jury of the nature of the Defendants' relationship and thus reveal any potential bias. Because the Court concludes that such evidence has probative value in relation to the issue of bias, it will not exclude the evidence as

irrelevant.[4]

## II. RULES 404 AND 608 DO NOT PRECLUDE EXTRINSIC EVIDENCE OF BIAS.

The Defendants argue that, even if the proffered evidence is relevant, the Court should exclude it under rules 404 and 608. Rule 404 precludes "[e]vidence of a person's character . . . for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). Certain exceptions exist if such evidence is introduced to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Rule 608 governs evidence of a witness' character for truthfulness or untruthfulness. Fed. R. Evid. 608.

If the issue before the Court was whether to admit evidence of Holweger's affair to impeach Holweger, these rules would supply the appropriate analysis. Under that analysis, the evidence would be inadmissible to show that Holweger's character is bad or that he is untruthful. Moreover, rule 608 prohibits extrinsic evidence of specific instances to attack a witness' character for truthfulness. See Fed. R. Evid. 608(b). Neither of these rules, however, directly address bias.

The Plaintiffs are not seeking to show that Holweger's character is bad and that he acted in conformity with that bad character during his interaction with the Plaintiffs. Nor are they attempting to use evidence of Holweger's affair to attack his credibility or truthfulness. Holweger's affair itself is not the issue. The issue is Paige's alleged involvement in that affair and the inferences that a jury could draw from that involvement with respect to the Defendants' bias in favor of one another.

---

[4] The Defendants have suggested that the Court should exclude evidence of Holweger's alleged extramarital affair because the Plaintiffs seek to introduce it for the sole purpose of harassing the Defendants. Because the Court finds that the proposed evidence is relevant to bias, it does not believe that rule 611(a) requires exclusion of the evidence.

Accordingly, the Court does not believe that rules 404 and 608 preclude evidence of Paige's involvement in Holweger's alleged extramarital affair. And while the Federal Rules of Evidence do not explicitly deal with impeachment for bias, the Supreme Court has stated that "it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption." United States v. Abel, 469 U.S. at 51. Moreover, it is permissible to do so by extrinsic evidence, and bias is not collateral. See id. at 52 ("The 'common law of evidence' allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to 'take the answer of the witness' with respect to less favored forms of impeachment."); United States v. Keys, 899 F.2d 983, 986 n.2 ("Bias may be proved by extrinsic evidence even after a witness's disavowal of partiality.").

## III. THE SPOUSAL PRIVILEGES DO NOT PREVENT GROPP FROM TESTIFYING WILLINGLY, BUT DO PRECLUDE TESTIMONY REGARDING CONFIDENTIAL COMMUNICATIONS BETWEEN HOLWEGER AND GROPP DURING THEIR MARRIAGE.

The Defendants also argue that the Court should preclude the Plaintiffs from introducing evidence of Holweger's alleged extramarital affair because such evidence is protected by the marital privilege. The Court has previously stated that it does not believe that the New Mexico spousal privilege applies in this case. See Order, filed May 11, 2004 (Doc. 126)(finding that New Mexico law does not provide basis for spousal privilege in this case). In federal question cases, such as this case, federal courts should apply privileges as defined by "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. State privilege law applies only in cases in which "State law supplies the rule of decision." Id.

Federal common law recognizes two marital privileges. The first privilege "permits one spouse to decline to testify against the other during the marriage." United States v. Bahe, 128 F.3d 1440, 1441-42 (10th Cir. 1997)(citing Trammel v. United States, 445 U.S. 40 (1980)). While this privilege traditionally rested in both the defendant spouse and the witness spouse, the Supreme Court of the United States modified the rule in 1980 so that the witness spouse alone has a privilege to refuse to testify adversely to his or her spouse. See Trammel v. United States, 445 U.S. at 53. It is unclear, however, whether the adverse testimony privilege is available in civil cases.

> It is essential to remember that the [testimonial] privilege is not needed to protect information privately disclosed between husband and wife in the confidence of the marital relationship -- once described by this Court as "the best solace of human existence." Those confidences are privileged under the independent rule protecting confidential marital communications. The [testimonial] privilege is invoked, not to exclude private marital communications, but rather to exclude evidence of criminal acts and of communications made in the presence of third persons.

See id. at 51 (citations omitted); Hawkins v. United States, 358 U.S. 74, 77 (1958)("The basic reason the law has refused to pit wife against husband or husband against wife in a trial where *life or liberty is at stake* was a belief that such a policy was necessary to foster family peace[.]")(emphasis added).

Even if the adverse testimony privilege does exist in civil cases, it is unavailable to Holweger. The witness, Michelle Gropp, holds the privilege and may elect to testify against Holweger if she chooses. Holweger cannot prevent Gropp from testifying freely by invoking the adverse testimony privilege. Moreover, the privilege does not survive the termination of the marriage. See Pereira v. United States, 347 U.S. 1, 6 (1954). Thus, because Holweger and Gropp are divorced, the privilege does not apply.

The Defendants' primary privilege argument is that the second spousal privilege, the marital communications privilege, applies to this case. The marital communications privilege protects private

communications made between spouses during the marriage. See Wolfle v. United States, 291 U.S. 7, 14 (1934); United States v. Bahe, 128 F.3d at 1442. Either spouse may assert the marital communications privilege. See United States v. Bahe, 128 F.3d at 1442 ("[E]ither spouse may assert [the privilege] to prevent the other from testifying to confidential communications made during the marriage."). Thus, the marital communications privilege is available to Holweger for communications during his marriage, despite that he is no longer married to Gropp.

The party seeking to overcome the privilege has the burden of establishing that the communications were not intended to be confidential. See Wolfle v. United States, 291 U.S. at 15 ("Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged."); Blau v. United States, 340 U.S. 332, 333 (1951)(reiterating rule of presumptive confidentiality in response to argument that party asserting privilege had not proved that information was privately conveyed). The only marital communication that the Court is aware of in this case is Holweger's alleged confession to Gropp that he engaged in an extramarital affair which Paige orchestrated. The Plaintiffs have not presented the Court with evidence to overcome the presumption that this communication was made privately and intended as confidential.

The Plaintiffs have also not presented the Court with evidence that waiver destroyed the marital communications privilege with respect to Holweger's alleged confession. There is no evidence in the record that Holweger disclosed his confession to anyone other than his former wife. The only disclosure the Court is aware of is Gropp's alleged disclosure to the Plaintiffs' counsel. And while that disclosure may waive Gropp's privilege, it does not waive Holweger's privilege. "[A] waiver requires an intentional disclosure of the content of the confidential communication *by the*

*party seeking to invoke the privilege*." United States v. Bahe, 128 F.3d at 1442 (citing 2 Stone and Taylor, Testimonial Privileges § 5.12 at 5-28 to 5-30 (2d ed.1993))(emphasis added). Holweger, as the party seeking to invoke the privilege, has not intentionally disclosed the confidential communication to anyone other than Gropp. Accordingly, no waiver has occurred.

The Court believes that the marital communications privilege is available to Holweger in this case. As long as Holweger continues to assert the privilege, the Court will not allow the Plaintiffs to question either Holweger or Gropp about Holweger's alleged confession to Gropp unless the Plaintiffs can overcome the presumption of confidentiality or show that Holweger waived the privilege.[5] Because the privilege only extends to communications, however, it does not preclude the Plaintiffs from questioning the Defendants, or other witnesses, about the existence of the alleged extramarital affair.[6]

## IV. THE DANGER OF UNFAIR PREJUDICE OF EVIDENCE CONCERNING THE ALLEGED EXTRAMARITAL AFFAIR DOES NOT SUBSTANTIALLY OUTWEIGH ITS PROBATIVE VALUE.

Finally, the Defendants argue that, even if the Court finds evidence regarding the extramarital affair relevant and admissible, it should still exclude the evidence because the danger of unfair prejudice to the Defendants substantially outweighs the evidence's probative value. The Defendants contend that the Plaintiffs' sole purpose in questioning the Defendants regarding the extramarital

---

[5] While the marital communications privilege may not technically apply to questions to Paige regarding Holweger's confession to Gropp, the Court will instruct the Plaintiffs not to question Paige on that issue in the jury's presence without first approaching the bench for a sidebar conference.

[6] The Defendants also argue that the Plaintiffs' offer of proof concerning the extramarital affair contains double hearsay because the Plaintiffs seek to elicit what Gropp told Plaintiffs' counsel that Holweger said to Gropp. Because the Court believes that the marital communications privilege precludes this testimony, the Court need not address the hearsay issue.

affair is to inflame the passions and prejudices of the jury against the Defendants. The Court has found that there is a proper purpose for the evidence and that it is probative of the nature of the relationship between the Defendants and any potential bias. Because the outcome of this case may hinge on whether the jury accepts the Plaintiffs' or the Defendants' version of events, credibility is critical. Thus, the probative value of evidence tending to show the Defendants' bias in favor of one another is substantial.

While allegations of marital infidelity may carry a degree of prejudice, the Court does not believe that this danger substantially outweighs the probative value of the evidence as it relates to bias. Because, however, the Court believes that it is Paige's involvement in Holweger's extramarital affair that is relevant to bias, rather than the fact that the affair occurred, the Court will not allow testimony or evidence concerning the details of the alleged affair. The Plaintiffs may attempt to elicit testimony or introduce evidence regarding Paige's knowledge of the affair, any efforts he made to protect Holweger by preventing Gropp from learning of the affair, and his involvement, if any, in setting up the affair. Any other details are unnecessary and their probative value is substantially outweighed by the danger of unfair prejudice to the Defendants. The Court will also give an appropriate limiting instruction if requested by the Defendants.

**IT IS ORDERED** that the Plaintiffs' Motion in Limine to Introduce Evidence of Defendant Holweger's and Defendant Paige's Bias to Testify Favorably for Each Other and the Defendants' Motion in Limine No. VIII: Motion to Limit Plaintiffs' Cross Examination of Defendants are both granted in part and denied in part. The Court will allow the Plaintiffs to introduce evidence concerning the Defendants' work history together and their close personal friendship. Provided that the Plaintiffs have a good faith basis for such questions, the Court will also allow the Plaintiffs to

question the Defendants regarding Paige's involvement in Holweger's alleged extramarital affair. Such questioning may not attempt to elicit details beyond Paige's knowledge and involvement. The Court will allow the Plaintiffs to introduce extrinsic evidence, through Gropp's testimony, concerning Paige's knowledge of or involvement in the affair. The Court will not allow any questioning, of Holweger or of Gropp, related to Holweger's alleged confession to Gropp. If the Plaintiffs plan to question Paige regarding the confession, they must first approach the bench for a sidebar conference. The Court instructs the Plaintiffs and their counsel not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any excluded evidence.

UNITED STATES DISTRICT JUDGE

Counsel:

Marc Lowry
Carolyn Nichols
Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg, LLP
Albuquerque, New Mexico

*Attorneys for the Plaintiffs*

Stephanie M. Griffin
City of Albuquerque Legal Department
Albuquerque, New Mexico

*Attorney for the Defendants*